THE UNITED STATES DISTRICT COUT
THE EASTERN DISTRICT OF NEW YOK
-------------------------------------------------------------------X
FEMALE PORT AUTHORITY OFFICER 47708

                        Plaintiff,                  **COMPLAINT**

          -against-                  Index No.:

                                        **JURY TRIAL REQUESTED**

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY OF NEW
YORK AND NEW JERSEY POLICE DEPARTMENT,
CHAIRMAN JOHN DEGNAN, VICE CHAIR
SCOTT RECHLER, SUPERINTENDENT
MICHAEL FEDORKO, POLICE OFFICER MICHAEL
TANIS, POLICE OFFICER MATHEW SMITH
AND JOHN & JANE DOES 1-15,

                        Defendants.
-------------------------------------------------------------------X

       Plaintiff[1], by and through her attorneys, Jospeh Mure Jr., & Associates, by way of Complaint, allege upon information and belief as follows:

### INTRODUCTION

       1.     On August 22, 2014, the Port Authority of New York and New Jersey Police Department graduated 249 Police Recruits from the 113th Recruit Class. The following day, the 113th Recruit Class held its graduation party in Hoboken, New Jersey. A graduation party was the custom and practice of preceding Recruit Classes.

       2.     Approximately 200 Port Authority Police Department employees attended the festivities, ranging in rank from Lieutenant to Police Officer. Upon information and belief, a

---

[1] Plaintiff's identity is being protected because she is a victim of a sexual assault. 47708 is Plaintiff's unique and individual identification during her former employment.

- 1 -

majority of the attendees were recent Recruit graduates and their Police Academy supervisors and instructors.

3. Throughout the course of the night, numerous Port Authority employees became intoxicated and engaged in various acts of misconduct and criminal behavior, which included inappropriate touching of female Port Authority Officers and sexual assault.

4. The raucous conduct gained local media attention during the week of August 31, 2014. This prompted numerous stories to appear in the news media regarding the Port Authority Police graduates causing major intoxicated disturbances while attending the party.

5. Responding to the news accounts, the Port Authority Office of Inspector General's Police Integrity Unit conducted a comprehensive department wide investigation which included interviewing 95 probationary police officers, 11 police academy staff, and employees of the establishment where the party was held. As a result of the comprehensive investigation, 24 Port Authority Police Department employees were determined to have been engaged in misconduct.

6. Plaintiff ***was not*** 1 of the 24 employees listed and determined to have engaged in misconduct. Additionally, the investigation uncovered that a Police Academy Instructor grabbed the Plaintiff's breast at the party. Plaintiff was also sexual assaulted by a second Academy instructor in the same hotel room.

7. Nevertheless, Plaintiff was one of nine probation police officers terminated as a result of the investigation.

## PARTIES

9. Plaintiff 47708 is a Caucasian female who resides in Queens County, New York. At all time relevant to this action, Plaintiff was an Officer of the Port Authority of New York and New Jersey and employed to patrol LaGuardia Airport.

10. Defendant Port Authority of New York and New Jersey (the Port Authority) is a bi-state entity created by the joint effort of the two states and has offices throughout New York and New Jersey. The Port Authority is a public entity that builds, operates, and maintains critical transportation and trade assets. Its network of aviation, rail, surface transportation and seaport facilities annually moves millions of people and transports vital cargo throughout the New York/New Jersey region. The Port Authority also owns and manages the 16-acre World Trade Center site, home to the iconic One World Trade Center.

11. Defendant Chairman John Degnan, in his individual and official capacity, is an Officer of the Port Authority. Defendant is responsible for advancing the mission and promoting the objectives of the Port Authority to members of the general public and communicating policy.

12. Defendant Vice Chair Scott Rechler, in his official and individual capacity, is the Vice Chairman of the Port Authority and possesses the authority granted through the Port Authority's bylaws to set and communicate official policy.

13. Defendant Michal Fedorko, in his individual and official capacity, was employed by the Port Authority as the Superintendent of Police at all times relevant. He was duly appointed and acting as an officer, servant, employee and/or agent of the State of New York and/or the State of New Jersey and/or of the Port Authority. At all times relevant, he was acting under the color of state law.

14. Defendant Port Authority of New York and New Jersey Police Department is a public entity doing business in the state of New York and New Jersey.

15. At all relevant times, Defendant Police Officer Michael Tanis, employee number 44985, was a Port Authority police officer and instructor at the Port Authority Police Academy. He was duly appointed and acting as an officer, servant, employee and/or agent of the State of New York and/or the State of New Jersey and/or of the Port Authority. At all times relevant, he was acting under the color of state law.

16. At all relevant times, Defendant Police Officer Matthew Smith, employee number 45442, was a Port Authority police officer and instructor at the Port Authority Police Academy. He was duly appointed and acting as an officer, servant, employee and/or agent of the State of New York and/or the State of New Jersey and/or of the Port Authority. At all times relevant, he was acting under the color of state law.

17. Defendant John and Jane Does 1-15, are duly appointed and acting as an officer, servant, employee and/or agent of the State of New York and/or the State of New Jersey and/or of the Port Authority. At all times relevant, he was acting under the color of state law.

## JURISDICTION AND VENUE

18. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and the pendent jurisdiction of this Court over state claims.

19. Venue is lodged in this Court pursuant to 28 U.S.C § 1391(b)(1) because defendant Port Authority of New York and New Jersey resides in this judicial district. See § 1391(c)(2) (explaining that an entity "resides" in any judicial district in which it is subject to personal jurisdiction). The Port Authority has consented to suit in any jurisdiction within New York City, pursuant to N.Y. Unconsol. Law §7106.

## JURY DEMAND

20. Plaintiff demands trial by jury.

## PROCEDURAL REQUIREMENTS

21. On or about May 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). The charge arises out of the same facts alleged herein.

22. On or about September 9, 2015, Plaintiff received her Notice of Right to Sue from the EEOC. This action has been filed within 90 days of Plaintiff's receipt of her Notice of Right to Sue from the EEOC.

23. Prior to the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

24. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATOINS

*Plaintiff's employment with the PAPD*

25. On or about March 10, 2014, Plaintiff entered into the 113th Police Recruit Academy Class for the Port Authority Police Department. Academy recruits receive 25 weeks of intensive training in New York and New Jersey law, behavior sciences, police practices and procedures, laws of arrest and court procedures and testimony.

26. Plaintiff completed all academy requirements, and was successfully promoted from Recruit to Probationary Police Officer with the rest of the 113th Recruit class.

*The graduation party*

27. As was a custom practice in the Academy classes, the Recruit supervisors and instructors allocated class time in order for the Recruits to organize, plan, and collect money for a graduation party.

28. Prior to the graduation party, Sergeant Suzanne Diaz, a female instructor at the Academy was aware that male instructors use the graduation party as an opportunity to target and prey on intoxicated female graduates in order to have sex with them. In one example, prior to the graduation party, Sergeant Diaz warned a female Recruit that having sex with a male instructor would be detrimental to the female officer's reputation and career, in which the male officer would hold that act against the female officers for the rest of their career.

29. The 113th Class arranged to hold their graduation party at Zeppelin Hall Biergarten and Restaurant ("the Beer Garden") on August 23, 2014, the day after their graduation. The graduation party at the Beer Garden was held between 7:00 P.M. and 10:00 P.M., and provided all 200 Port Authority Employees access to an "open bar" for three hours.

30. When the open bar at the Beer Garden ended, approximately 100 Port Authority employees continued the party at a nearby bar, Texas Arizona.

31. While Plaintiff initially did not want to go to Texas Arizona, Detective William Kruesi and Defendant Tanis pressured Plaintiff, and one other female recruit to attend Texas Arizona. Kruesi offered to pay for Plaintiff's cab fair to Texas Arizona. Tanis, arranged for a Port Authority Police car to pick up him and take him to Texas Arizona.

*Plaintiff is Sexually Assaulted*

32. At Texas Arizona, Plaintiff continued to drink and socialize with her class members and Defendant Tanis.

33. At one point, Defendant Tanis grabbed Plaintiff's breast. Such conduct was unwelcomed and without Plaintiff's consent. Plaintiff expressed to Defendant Tanis such conduct was unwelcomed.

34. Upon exiting the bar, Plaintiff attempted to separate herself from Defendant Tanis and search for the female Probationary Officer whom she attended the graduation party with and intended to spend the night in her apartment. When Plaintiff could not find her friend, she became emotionally upset because she was unfamiliar with the area and, having intended to sleep at her friend's apartment, was concerned about where she would spend the night.

35. After Plaintiff separated from Tanis, Defendant Tanis in hot pursuit of the Plaintiff, caught up to her. At that point Plaintiff was clearly emotionally upset, crying, and vulnerable, however, Defendant Tanis knowing that Plaintiff was vulnerable, kissed the Plaintiff and instructed her to spend the night in a nearby hotel room he had rented with another Academy instructor, Defendant Smith.

36. Plaintiff, who had an upcoming evaluation at the firing range where Defendant Tanis was an instructor and evaluator, eventually submitted to his persistent request for Plaintiff to come to his hotel room.

37. When Plaintiff and Defendant Tanis arrived at the room, Instructor Smith and another female Recruit were engaging in sexual intercourse.

38. Defendant Tanis, in the adjacent bed to Smith, began engaging in intercourse with Plaintiff. Defendant Smith, then stated, "Can we swap now?" in reference to the Plaintiff and other female recruit. Plaintiff forcefully rejected such a suggestion.

39. Later in the evening, Plaintiff sat alone, fully clothed on the couch in the room to watch television. Defendant Smith, undeterred from Plaintiff's previous rejection, sat fully nude

next to her and made more sexual advances. This occurred despite Plaintiff's clear and unequivocal prior rejection of Smith's sexual advances.

40. To get away from Defendant Smith, Plaintiff got off the couch and attempted to move to another section of the room.

41. Defendant Smith, while completely nude, sprung off the couch, pinned the Plaintiff against the wall, forced his hand down Plaintiff's pants, and began to fondle and digitally penetrate Plaintiff's gentiles.

42. Defendant Smith overpowered Plaintiff's attempt to stop the attack. During the course of the struggle between Defendant Smith and the Plaintiff, Defendant Tanis initial reacted in manner to stop the attack, however, stopped his pursuit in intervene once Smith released Plaintiff from the wall.

43. Defendant Tanis, a six-year veteran of the Police Department and witness to Defendant Smith's sexual battery of Plaintiff, failed to investigate why Defendant Smith had Plaintiff pinned against a wall and his hands down her pants. Furthermore, Defendant Tanis aided, abetted, and conspired with Smith to cover up Defendant Smith's crime, by failing to report or arrest Defendant Smith for the sexual assault he committed against Plaintiff.

44. The following morning, Defendant Tanis drove Plaintiff to her friend's apartment located in Jersey City, New Jersey. Just prior to Plaintiff's exit of Defendant Tanis's car, he threatened Plaintiff not to tell anyone what had occurred in the hotel room during the previous night.

*The Port Authority discriminates against the Plaintiff because of her gender.*

45. During the graduation party, several Port Authority law enforcement employees engaged in various acts of misconduct and criminal activity. Such conduct included male Port

Authority employees grabbing the breasts and buttocks of female patrons, and fighting with bar staff.

46. This criminal behavior required uniformed Port Authority officers to respond to the complaints from the bar owner. In the days following the graduation party, multiple media outlets reported accounts Port Authority employee's unruly conduct.

47. The Port Authority Office of Inspector General's Police Integrity Unit conducted a comprehensive department wide investigation which included interviewing of 95 probationary police officers, 11 police academy staff, and employees of the establishment where the party was held. As a result of the comprehensive investigation, 24 Port Authority Police Department employees were determined to have been engaged in misconduct.

48. For example, PIU found that Probationary Police Office Thomas Small, a male officer who graduated with Plaintiff, told investigators during his interrogation that he deleted information off his phone prior to be called for questioning. He assured the investigator's that the information he deleted did not contain any pictures. At the end of his interrogation, investigators recovered pictures from his phone that he attempted to delete. Officer Small was cited for misconduct for "fail[ing] to be truthful".

49. Another example, Probationary Police Officer is Ryan Quirk, another male officer who graduated with Plaintiff, was cited in PIU's findings that he "continually lied and [was] deceitful to PIU investigators". Like Officer Small, PIU determined Quirk "failed to be truthful"

50. PIU's findings also included multiple other unnamed Probationary Officers to respond "I don't remember" to some of the interrogation questions, or stated like nearly every other Probationary Officer interviewed that they felt "buzzed" but not intoxicated. (Long, unclear sentence. Break it up into clear shorter ones). Plaintiff, answered similarly as the male

Probationary Police Officers, and like every other Probationary Officer interviewed. She was not included in a list of 24 law enforcement employees PIU found to have engaged in misconduct, in which PIU cited a reason for the misconduct.

51. Yet, both these male probationary officers, whose listed misconduct was fail[ing] to be truthful", were suspended for the 30 days without pay, and put on extended probation.

52. Plaintiff, a female probationary officer who was not cited for failing to be truthful, was terminated from her employment, while male officers were permitted to keep their jobs.

53. Additionally Defendant Tanis, who was found to have engaged in misconduct that "brought discredit to PA" and "conduct unbecoming" based the video footage of him grabbing the Plaintiff's breast and bringing her back to his hotel room, received no disciplinary action.

54. The other Defendants were well aware of Defendant Tanis's conduct toward Plaintiff, which was cited by PIU in their report, and accepted and ratified his course of behavior, by failing to assert any disciplinary action against him. In fact, the other Defendants never even questioned or confronted Defendant Tanis regarding the video footage of him grabbing the Plaintiff's breast, or that Defendant Tanis lied during his investigation by failing to tell investigators that: 1) he spent a majority of his time in Texas Arizona talking with Plaintiff, 2) he grabbed Plaintiff's breast and kissed her, both acts being unwelcomed and nonconsensual, 3) coerced her to spend the night in his hotel room, where he engaged in sexual intercourse with her, 4) he witnessed and failed to act on Defendant Smith's sexual assault committed against Plaintiff, and 5) that he drove Plaintiff to her friend's apartment the following morning, and threatened her against speaking of the events from the previous night to anyone.

55. On or about November 7, 2014 Plaintiff was terminated from her employment with the Port Authority, along with eight other Probationary Officers,.

56. Of the nine officers terminated, Plaintiff was the only officer in which PIU found not to have committed some underlying criminal act at the graduation party.

57. In December 2014, Plaintiff wrote a letter to Defendant Chairman Degnan, pleading for an opportunity to explain the events and acts that occurred on the night of the graduation party, and to be provided a proper explanation for her termination.

58. In a reply letter, Plaintiff was informed that her termination "was consistent with the Port Authority's rules and regulations after a review of the full facts and circumstances of the incident and the subsequent investigation".

## AS AND FOR A FIRST CAUSE OF ACTION
**(Discrimination and Harassment in Violation of Title VII)**

59. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 58 , inclusive, as if fully set forth herein.

60. Defendants have discriminated against Plaintiff on the basis of her sex, in violation of Title VII by denying to her equal terms and condition of employment, including but not limited to subjecting her to an adverse employment action and a hostile work environment.

61. Defendants have discriminated against Plaintiff on the basis of her sex, in violation of Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

62. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

63. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer mental severe mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment,

stress and anxiety, loss of self–esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

64. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. § 1985 Conspiracy to interfere with Plaintiff's civil rights)

65. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 64, inclusive, as if fully set forth herein.

66. Male Port Authority Police academy instructors implemented a common practice, plan, and scheme, to conspire and act in concert to target and prey on intoxicated female academy graduates during Police Academy Recruit graduation parties. This plan was revealed by Sergeant Suzanne Diaz, a female instructor at the Academy, by warning the female Recruits that the male instructors use the graduation party as an opportunity to target and prey on intoxicated female graduates in order to have sex with them.

67. Defendants Tanis and Smith, both male academy instructors, took overt steps to carry out the conspiracy by booking and sharing a hotel room in close proximity to the graduation party, which was the location used to sexually assault the Plaintiff and violate her Constitutional rights.

68. Defendant Tanis ensured the successful completion of their conspiracy, by permitting Defendant Smith to forcibly penetrate the Plaintiff with his fingers without arresting or reporting the crime, and took even further steps by telling Plaintiff not to mention what happened in the hotel room with anyone.

69. As a direct and proximate result of Defendants unlawful conduct, Plaintiff's Constitutional rights were violated, and has suffered and continues to suffer mental severe

mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment, stress and anxiety, loss of self –esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

70. Defendants' unlawful actions constitute malicious, willful, and wanton violations of Plaintiff's Constitutional rights, for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### (42 U.S.C. §1986)

71. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 70, inclusive, as if fully set forth herein.

72. Defendants were aware of the the conspiracy of the male instructors to prey on intoxicated female officers, yet willfully, and intentionally, neglected to take steps to prevent the violation of Plaintiff's rights.

73. For example, a focal point of the PIU involved the allegation that Port Authority Police officers grabbed the buttocks and breast of female patrons of Texas Arizona.

74. Upon information and belief, every Port Authority employee interviewed by PIU in connection the graduation was asked whether they observed and/or heard about such an allegation. At the conclusion of the investigation, two Port Authority Police Officers were terminated due in part because PIU determined those Officers committed the alleged grabbing of female patrons' breast and buttocks.

75. The Defendants, who were in possession video footage of Defendant Tanis grabbing Plaintiff's' breast, and knew Defendant Tanis brought Plaintiff to his hotel room, failed to question Defendant Tanis about his conduct. Furthermore, despite PIU recommending

Defendant Tanis for disciplinary action for "Conduct unbecoming" and "Brought discredit to PA", the Defendants failed to impose **any** disciplinary action on Defendant Tanis.

76. Defendants instead, terminated Plaintiff.

77. As a direct and proximate result of Defendants unlawful conduct in violation of Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

78. As a direct and proximate result of Defendants unlawful conduct in violation of Plaintiff has suffered and continues to suffer mental severe mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment, stress and anxiety, loss of self –esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

79. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Plaintiff's Constitutional rights and is entitled to an award of punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983)

80. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 79, inclusive, as if fully set forth herein.

81. Defendant Port Authority's policy, procedure, and custom is an off-duty officer who observes a crime, becomes an on-duty officer instantly. An example of this policy is evident by the PIU investigation, where two probationary officer engaged in misconduct and were terminated because they "failed to action" after observing several persons jump over a turnstile at the PATH train station.

82. Defendants, who committed, witnessed, aided and abetted, the sexual assault of Plaintiff were acting under the color of state law while violating Plaintiff's Fourteenth Amendment rights.

83. These unlawful and unconstitutional Port Authority actions were adopted and ratified by the Port Authority policy makers, including but not limited to, the Port Authority Chairman, Defendant Degnan, and the Port Authority's Vice Chairman, Scott Rechiter.

84. The ratification of the conduct was communicated in writing to Plaintiff in response to a letter Plaintiff sent to Chairman Degnan.

85. As a direct and proximate result of Defendants unlawful conduct in violation of Plaintiff's Fourteenth Amendment rights Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

86. As a direct and proximate result of Defendants unlawful conduct in violation of Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment, stress and anxiety, loss of self – esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

87. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Plaintiff's Constitutional rights and is entitled to an award of punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Discrimination and Harassment in Violation of New York State Human Right Law)**

88. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 87, inclusive, as if fully set forth herein.

89. Defendants have discriminated against Plaintiff on the basis of her sex in violation of the New York State Human Rights Law by denying to her the equal terms and conditions of employment and hostile work environment.

90. As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

91. As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment, stress and anxiety, loss of self–esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

92. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of New York State Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

### AS AND FOR A SIXTH CAUSE OF ACTION
**(Discrimination and Harassment in Violation of New York City Human Rights Law)**

93. Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs 1 through 92, inclusive, as if fully set forth herein.

94. Defendants have discriminated against Plaintiff on the basis of her sex in violation of the New York City Human Rights Law by denying to her the equal terms and conditions of employment and hostile work environment.

95. As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

96. As a direct and proximate result of Defendants unlawful discriminatory conduct in violation of New York City Human Rights Law, Plaintiff has suffered and continues to suffer mental severe mental anguish and emotional distress, including but limited to depression, humiliation, embarrassment, stress and anxiety, loss of self –esteem and self confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

97. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of New York City Human Rights Law for which Plaintiff is entitled to an award of punitive damages.

## *PRAYER FOR RELIEF*

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and otherwise unlawful conduct, as well as to take such affirmative action as necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

C.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

E.    An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F.    An award of punitive damages;

G.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted, this 5th day of November, 2015.

JOSEPH MURE, JR., & ASSOCIATES

_____
Joseph Mure, Jr., Esq. (Mure77)
joemurejr@aol.com
Attorney for Plaintiff
26 Court Street, Suite 2601
Brooklyn, NY 11242
(718) 852-9100
(718) 797-5554 fax